[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11124
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 9, 2012
JOHN LEY
CLERK

D.C. Docket No. 4:09-cv-00143-RLV

BARRY BENSON,

                                        Plaintiff-Appellee,

versus

GORDON COUNTY, GEORGIA, et al.,

                                        Defendants,

FELICIA RUTLEDGE, in her official and
individual capacity,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 9, 2012)

Before BARKETT, PRYOR, and COX, Circuit Judges.

PER CURIAM:

Barry Benson alleges that he received inadequate medical treatment while a pretrial detainee at the Gordon County, Georgia jail. He filed suit asserting a claim under 42 U.S.C. § 1983 for deliberate indifference to his medical needs and a Georgia state law claim.[1] Benson named Gordon County, the County's current and former Sheriff, and the nurse and physician who were responsible for his care as defendants. The former Sheriff was sued in his individual capacity, while the nurse and doctor both were sued in their official and individual capacities. Only the jail nurse, Felicia Rutledge, is a party to this appeal.

After answering Benson's complaint, Rutledge filed a motion for summary judgment, which maintained she had qualified immunity on the § 1983 claim and official immunity under Georgia law on the state law claim. The district court denied the motion for summary judgment on the § 1983 and state law claims. Rutledge appeals this order. She raises two issues: (1) whether the court erred by denying Rutledge qualified immunity on the § 1983 claim; and (2) whether the court erred by denying official immunity as to the state law claim.

We first consider whether the district court erred by denying Rutledge's claim of qualified immunity on the § 1983 claim. We review de novo the district court's

---

[1] The complaint also asserted claims under the Rehabilitation Act and the Americans with Disabilities Act, but these claims are not relevant to this appeal.

2

resolution of a summary judgment motion based on qualified immunity. *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002)). "[W]e resolve all issues of material fact in favor of the plaintiff." *Id.*

To claim qualified immunity, Rutledge must demonstrate that she was engaged in a discretionary function. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) (citing *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). Then, Benson must establish qualified immunity is not appropriate because the facts when viewed in the light most favorable to him show that Rutledge violated a constitutional right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001)). "[S]econd, the plaintiff[] must also show that the right involved was 'clearly established' at the time of the putative misconduct." *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009)). Here, Benson does not dispute Rutledge was acting within her discretionary authority. Therefore, the case turns on whether Rutledge violated a constitutional right and whether that right was clearly established.

The Fourteenth Amendment secures the rights of pretrial detainees. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983 (1983)). Under our

3

precedent, we evaluate a pretrial detainee's claim of deliberate indifference to his medical needs as if it were brought under the Eighth Amendment. *Id.* (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985)). "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Id.* at 1306-07 (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

Whether the plaintiff had a serious medical need is an objective inquiry. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). "In our circuit, a serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

Benson alleges he suffered from a variety of medical needs while he was incarcerated. He says that Rutledge was deliberately indifferent to his urinary and fecal incontinence, his immobility, his development of a decubitus ulcer, his weight loss, a painful dental condition, and his back pain. We agree with Benson that when

the facts are viewed in the light most favorable to him he suffered from an objectively serious medical condition.

There is no dispute that when Benson was booked into the jail on July 23, 2008, he complained of back pain. Then, on July 25th when he saw a physician at the jail clinic, the physician recognized that Benson was suffering from a preexisting T-11 vertebral compression fracture. Rutledge's brief acknowledges that "[v]ertebral compression fractures are a common and very painful injury." (Appellant's Br. at 4.) Rutledge also agrees that the doctor prescribed Ibuprofen and Lortab for Benson's back pain. Thus, even setting aside the other medical conditions Benson asserts were serious, his vertebral compression fracture and the resulting back pain demonstrate that he was suffering from an objectively serious medical condition.

Whether Rutledge was deliberately indifferent to Benson's medical needs is a subjective inquiry. To establish deliberate indifference the "[p]laintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert*, 510 F.3d at 1327 (alteration in original) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)).

Rutledge's brief admits that patients suffering from vertebral compression fractures often have difficulty walking, sitting, or lying down. (Appellant's Br. at 4.)

5

Furthermore, viewing the facts in the light most favorable to the plaintiff, it is evident that Benson had trouble moving around during his time at the jail. Rutledge was aware that Benson could not stand up straight and that he struggled to get out of his bed. At one point, she witnessed that Benson smelled of urine and had dried fecal matter on his clothing. And, Rutledge admitted in her deposition that immobility and incontinence could lead to bed sores. Thus, a jury could find that Benson suffered from severe back pain and that the resulting immobility put Benson at risk of greater harm. A jury could also conclude that Rutledge was subjectively aware of Benson's pain and the attendant risks.

The harder question is whether Rutledge disregarded Benson's risk of serious harm. Benson argues that Rutledge withheld his pain medications on several occasions because Benson was unable to leave his bunk and retrieve the medication at the cell door. He also maintains that he did not receive his first prescribed dose of the pain medication Lortab until seven days after it was ordered. He believes that providing only Ibuprofen to control his back pain amounts to providing no treatment at all. In sum, he contends that he received pain medication only twelve days during his thirty-three day incarceration. Rutledge disputes all of this. She says that Benson received his Lortab as prescribed. She also counters by arguing that she provided Benson another inmate's left over prescription pain medication. But at this stage of

6

the proceedings, we must evaluate the facts in the light most favorable to Benson. Viewed in this manner, Rutledge either deliberately withheld Benson's pain medication, or provided grossly inadequate care by failing to give Benson pain medication for days at a time or by merely coming to his cell and offering medication that Benson could not retrieve. Thus, when viewing the facts in the light most favorable to Benson, Rutledge violated Benson's constitutional rights by being deliberately indifferent to his serious medical needs.

There is little question that clearly established law provided Rutledge fair warning that this conduct violated the Constitution. A case with materially identical facts is not necessary for the law to be clearly established, "but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (citation omitted). "Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (citing *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or

7

providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). The facts, when viewed in the light most favorable to Benson, demonstrate that Rutledge's conduct was deliberately indifferent to his serious medical needs in a manner proscribed by our precedent. This is not a case where the plaintiff has challenged a delay in treatment of only a few hours. *See Youmans*, 626 F.3d at 564-65 (discussing case law distinguishing between short delays and lengthy delays in medical treatment). Instead, he has put forth evidence that he went without pain medication for days. Rutledge knew Benson was in pain and that a physician had prescribed medication for that pain. Yet by failing to provide his medication, she allowed Benson to "needlessly suffer" from his back pain. Therefore, Rutledge is not entitled to summary judgment on the § 1983 claim on the ground of qualified immunity.[2]

Rutledge also challenges the district court's denial of summary judgment on the ground of official immunity from Benson's state law claim. Like our review of the denial of qualified immunity, "[w]e review de novo a district court's summary

---

[2] Given that "the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it [should] proceed to trial." *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002).

judgment denial of official immunity." *Hoyt v. Cooks*, 672 F.3d 972, 981 (11th Cir. 2012) (citations omitted). Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or ministerial or discretionary acts performed with malice or intent to injure. *Mann*, 588 F.3d at 1309 (quoting *Gilbert v. Richardson*, 452 S.E.2d 476, 483 (Ga. 1994)).

Benson's argument focuses solely on Rutledge's failure to perform her ministerial duties. We agree with the district court that "numerous questions of fact remain regarding defendant Rutledge's alleged violations of her ministerial duties." (Dkt. 214 at 40.) But, viewed in the light most favorable to Benson, there is no question that Rutledge did not perform some of her ministerial responsibilities as the jail nurse. Rutledge's only argument to support her demand for official immunity is that Benson cannot establish a casual connection between Rutledge's failure to perform her ministerial duties and Benson's alleged injuries. But, this argument goes to the merits of Benson's state law tort claim, not to the question of whether Rutledge is due official immunity. Thus, the district court did not err by denying Rutledge's motion for summary judgment on the state law claim based on official immunity.[3]

AFFIRMED.

---

[3] Like the qualified immunity issue, the official immunity question should proceed to trial because the evidence at the summary judgment stage, when viewed in the light most favorable to Benson, is inconsistent with official immunity being granted.